*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GARY/MONCRIEF, Minors.

UNPUBLISHED
October 19, 2023

No. 364748
Wayne Circuit Court
Family Division
LC No. 21-000543-NA

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her two children, QG and MM, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. FACTUAL BACKGROUND

On June 16, 2021, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over JM, QG, and MM. The petition first detailed that on November 11, 2020, Child Protective Services (CPS) received a complaint concerning the improper supervision of JM, QG, and MM, and a CPS specialist discovered respondent was homeless, and reported that she lacked stable housing since February 2020, and was staying with various relatives for the past eight months. The petition further alleged that (1) between November 7, 2020 and November 10, 2020, respondent left QG and MM under the care of her cousin, RJ, during which RJ sexually abused MM; (2) RJ contacted law enforcement after caring for QG and MM for five days, during which the Detroit Police Department found QG and MM without proper supervision; and (3) between December 2020 and May 2021, the agency repeatedly provided respondent with various housing, food, clothing, and financial resources.

---

[1] While the father was originally designated as a respondent, he is not a party to this appeal. Respondent's parental rights to the third child listed in the original petition and the permanent custody petition, JM, were not terminated.

The petition further alleged that (1) respondent was diagnosed with bipolar disorder approximately 10 years prior, but failed to seek medication or counseling for her condition, despite exhibiting poor judgment, extreme mood swings, and irritability; (2) respondent's assigned therapist expressed concerns regarding the minor children's mental health as well as the safety of QG and MM due to their living circumstances under respondent's care; (3) QG disclosed that he suffered sexual abuse by a minor cousin who the family resided with while respondent was homeless; and (4) respondent had prior contacts with CPS on August 13, 2010, September 14, 2012, and May 9, 2018, due to incidents of physical abuse, physical neglect, improper supervision, and a drug-exposed infant. The petition also purported that respondent was offered DHHS services related to substance use, improper supervision, and physical neglect, however, respondent failed to benefit from the previous programs. Following a preliminary hearing, the trial court authorized the petition, removed the minor children from respondent's care, and ordered respondent to complete the recommended DHHS programs.

On October 6, 2022, Christina Albany, a foster care worker, filed a permanent custody petition to terminate respondent's parental rights to JM, QG, and MM under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The petition alleged that (1) the DHHS provided referrals for parenting classes on seven different occasions, however, respondent was repeatedly terminated from parenting classes due to lack of contact or participation; (2) respondent failed to adequately participate in individual therapy; (3) Albany referred respondent for a psychiatric evaluation seven times before respondent finally completed the requirement on March 7, 2022; and (4) the psychiatric evaluation revealed respondent suffered from bipolar disorder, schizoaffective disorder, major depressive disorder, cannabis use disorder, and an unspecified trauma and stressor-related disorder. The petition further purported that respondent neglected partaking in the recommended DHHS services of mental health medication management, supervised parental visitations, mental health therapy, and the parent-partner program. The petition further alleged respondent did not obtain suitable housing and alternated between living in hotels and with her uncle, despite the agency providing respondent with numerous housing resources from December 2021 to August 2022. The petition also asserted that (1) respondent failed to attend any of the minor children's medical appointments; (2) respondent only participated in 17 out of 30 scheduled visitations with QG and MM; (3) respondent solely attended 10 out of 25 scheduled visitations with JM; and (4) respondent was present for 4 out of 28 scheduled visitations with all three children.

Following the January 4, 2023 trial, the trial court determined that petitioner presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court did not address MCL 712A.19b(3)(c)(*ii*). The trial court also determined that petitioner established, by a preponderance of the evidence, that termination of respondent's parental rights was in the best interests of QG and MM. This appeal followed.

## II. REASONABLE EFFORTS

Respondent argues that the trial court clearly erred when it terminated her parental rights because the DHHS did not make reasonable efforts to rectify the conditions that led to the minor children's removal, to reunify the family, and to avoid termination of respondent's parental rights.

To preserve an argument that the DHHS failed to provide reasonable efforts toward reunification, a respondent must "object or indicate that the services provided to them were somehow inadequate." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Generally, a respondent must object at or around the time the court adopts the reunification service plan. *In re Atchley*, 341 Mich App 332, 336-337; 990 NW2d 685 (2022). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Id*. at 337. Respondent did not object or otherwise indicate that the services provided were inadequate during the lower court proceedings. Accordingly, the issue is unpreserved.

This Court reviews unpreserved claims of error in termination of parental rights cases for plain error affecting substantial rights. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 5 n 3 (noting while the plain-error rule of *Carines*[2] does not apply to civil cases, it is applicable in termination of parental rights cases, which present different constitutional considerations); *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 40; 972 NW2d 282 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

"Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). Absent aggravating circumstances under MCL 712A.19a(2), the DHHS is required to adopt a service plan outlining the steps that both the agency and the parent will take to rectify the conditions that led to the court's involvement and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). Although the "[DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. Furthermore, a respondent's mere participation in and completion of portions of a treatment plan is insufficient to avoid termination of parental rights if the respondent "fail[s] to demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication . . . ." *Id*. To prove a claim for lack of reasonable efforts, a respondent must show that he or she would have fared better had the DHHS offered different or additional reunification services. *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).

The evidence shows that petitioner provided reasonable reunification services. Respondent was offered psychological and psychiatric services, counseling, parenting classes, a medication management program, a parent partner, and several housing resources. Respondent was further provided with gas cards and bus passes to aid in transportation. The agency also notified

---

[2] *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

respondent of available monthly property listings, Section 8-eligible apartments, and various housing applications, to assist respondent with obtaining adequate housing. Respondent, however, did not make reasonable efforts to avail herself of the services offered. During trial, petitioner presented detailed testimony that respondent failed to sufficiently participate in parenting classes despite the agency's nine referrals, and while respondent was currently partaking in parenting classes, she only attended 5 out of 14 sessions. Furthermore, respondent's communication with the DHHS was sporadic at best, as the agency attempted to communicate with respondent through text messages and phone calls, but respondent failed to reply.

Albany further testified that respondent was absent from all of the minor children's medical appointments, and respondent received a referral for the parent-partner program two or three times but was repeatedly terminated due to lack of contact. Regarding supervised parenting time, (1) between August 15, 2021 and February 24, 2022, respondent solely participated in 17 out of 30 offered visitations with QG and MM, (2) between September 9, 2021 and February 21, 2022, respondent was present for 10 out of 25 scheduled visitations with JM, and (3) between February 28, 2022 and October 6, 2022, respondent only attended 4 out of the 28 provided visitations with all three children. Albany shared, regarding mental health treatment, that respondent required seven referrals from the agency before she complied with the psychiatric examination, and respondent neglected to provide documentation of her current medication. Moreover, throughout the entirety of the child protective proceeding, respondent never acquired satisfactory housing despite the agency providing numerous resources.

Respondent fails to explain what additional efforts the DHHS should have made or how it would have led to a different result. "When challenging the services offered, a respondent must establish he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264. The DHHS consistently offered respondent a diverse range of services to address the matters that led to the initial adjudication and prohibited the children from returning to the care and custody of respondent. However, respondent was repeatedly terminated from these services. Under these circumstances, there was no inadequacy of reunification efforts negating the trial court's finding of statutory grounds supporting termination.

## III. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred when it determined that the DHHS presented clear and convincing evidence to support termination of her parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews a trial court's factual findings and ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

### A. MCL 712A.19b(3)(c)(*i*)

A ground for termination exists under MCL 712A.19b(3)(c)(*i*) if "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App at 710, citing MCL 712A.19b(3)(c)(*i*). Moreover, if the parent is a respondent in a proceeding under this chapter, "182 or more days [must] have elapsed since the issuance of an initial dispositional order." *In re Atchley*, 341 Mich App at 343, citing MCL 712A.19b(3)(c)(*i*). A parent's failure to resolve issues pertaining to substance use, or a parent's continued inability to provide adequate housing and financial support for a minor child, constitutes clear and convincing evidence that termination is appropriate under the cited statutory ground. *In re Frey*, 297 Mich App at 244-245.

It is undisputed that more than 182 days elapsed between the initial dispositional order issued on August 13, 2021, and the order terminating respondent's parental rights on January 4, 2023. Therefore, the issue is whether the conditions that led to adjudication continued to exist and, if so, whether there was a reasonable likelihood that they would be rectified within a reasonable time considering the young children's ages. We conclude that the trial court did not clearly err when it found clear and convincing evidence that the conditions that led to adjudication continued to exist, and there was no reasonable likelihood that they would be rectified within a reasonable time considering the ages of QG and MM.

Respondent's inadequate housing, mental health concerns, neglect, and improper supervision of the minor children led to the initial adjudication. Petitioner presented extensive testimony regarding respondent's inadequate compliance with the case service plan, and respondent's repeated termination from services aimed at addressing respondent's parenting skills, mental health, and housing deficiencies. Respondent was terminated from parenting classes a minimum of seven times due to lack of contact, and failed to consistently participate in supervised parenting time or maintain contact with her minor children. While respondent attempted to participate in required services approximately a year after the initial disposition, respondent neglected to establish sufficient progress to warrant the extension of reasonable efforts towards reunification, particularly in light of the minor children's ages, QG (10 years old) and MM (12 years old). See *In re Sanborn*, 337 Mich App at 274 (stating that even if a respondent has participated in all the services that the DHHS has offered, mere participation is not the same as overcoming the barriers justifying removal in the first place). Respondent also continued to suffer from homelessness despite the provision of numerous housing resources by the agency, and Albany's offer to assist respondent with the housing application process.

Respondent further opted to delay much-needed treatment for her mental health, which was critical in light of her diagnoses of bipolar disorder, schizoaffective disorder, major depressive disorder, cannabis use disorder, and an unspecified trauma and stressor-related disorder. Respondent was absent from every single medical appointment concerning the minor children, which resulted in the delay of MM's MRI on two separate occasions. QG additionally suffered from severe dental issues when he came into care, which included nine cavities, and all three minor children were at least a year behind in terms of schooling due to excessive absences. During trial, Albany noted MM qualified as a child with special needs due to her mental health issues, particularly with self-harm, and Albany subsequently informed respondent of the matter to allow MM to undergo a psychological examination. However, respondent failed to complete the required consent documents. Overall, the evidence showed that respondent exhibited a consistent

pattern of failing to understand, appreciate, and respond properly to the medical and mental health needs of herself and her children.

Ultimately, respondent's minimal and sporadic efforts to comply with the case service plan, the length and severity of respondent's mental health issues, and respondent's inability to properly care for QG and MM after more than a year of services, demonstrates that the trial court did not clearly err by finding that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*).

## B. MCL 712A.19b(3)(j)

Under MCL 712A.19b(3)(j), a trial court may terminate parental rights if it finds by clear and convincing evidence that there " 'is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.' " *In re Pops*, 315 Mich App 590, 599; 890 NW2d 902 (2016), quoting MCL 712A.19b(3)(j). Termination is proper pursuant to MCL 712A.19b(3)(j) if there is a potential of physical or emotional harm to the children. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

The trial court did not clearly err in finding that there was a reasonable likelihood that the children would be harmed if returned to respondent because of respondent's homelessness, documented mental health concerns, and respondent's general inability to adequately provide for the care and custody of QG and MM. While previously under respondent's care, MM purportedly suffered from sexual abuse because respondent left QG and MM under the care of RJ, who perpetrated the assault. Moreover, RJ contacted law enforcement as respondent did not return for her children after five days, and the Detroit Police Department found QG and MM without proper supervision. QG advanced similar allegations of sexual abuse, and reported that he was sexually abused by his brother JM during a period when respondent was homeless, and the family was forced to reside with other family members. Respondent's continued homelessness at the time of the evidentiary hearing posed a risk of the minor children experiencing similar or further trauma due to respondent's inability to provide QG and MM with a safe and stable home.

The evidence also established that respondent additionally appears incapable of addressing the children's various educational and mental health needs, as respondent herself repeatedly failed to acquire treatment and develop the critical parenting skills to provide structure for QG and MM. QG and MM completed trauma assessments, and were given provisional diagnoses of post-traumatic stress disorder, in addition to concerning cognitive scores. Furthermore, due to being approximately a year behind in terms of schooling due to excessive absences, QG required an individualized education program and special accommodations, and both children participated in weekly tutoring services and therapy. Respondent failed to attend a single medical appointment concerning the minor children, inconsistently participated in supervised visitations, and delayed seeking treatment for her mental health needs until approximately a year after the initial disposition.

The trial record likewise showed that respondent also neglected completing a full set of parenting classes or the parent-partner program to adequately develop the skills needed to successfully parent QG and MM. This was further reflected by two incidents which occurred

during supervised visitations that required DHHS intervention. During trial, petitioner detailed two significant incidents occurring during visitation: "The first involved allegations of physical abuse against [QG] by mother and an unknown uncle, and the second involved allegations that mother and an unknown aunt told [MM] she was overweight leading to [MM] becoming negatively focused on her weight." Consequently, evidence supported the conclusion that it would be unlikely that respondent would ensure QG and MM were able to obtain the necessary psychological and educational care for their wellbeing, and provide the structure necessary for the children to thrive.

Clear and convincing evidence showed that respondent was granted an opportunity to remedy the conditions that presented a risk of harm to QG and MM, and her inability to do so has placed, and will continue to place, her children at risk of further trauma. Therefore, the trial court did not clearly err in finding that there is a reasonable likelihood, based on the conduct or capacity of respondent, that QG and MM will be harmed if returned to respondent.[3]

## IV. BEST INTERESTS

Finally, we reject respondent's argument that the trial court clearly erred when it determined that termination of respondent's parental rights was in the best interests of QG and MM under MCL 712A.19b(5).

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in

---

[3] Although respondent alleges that the termination of her parental rights was not proper under MCL 712A.19b(3)(g), "[i]f the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights." *In re Sanborn*, 337 Mich App at 273. Having determined that termination was justified under subsections (3)(c)(*i*) and (3)(j), we need not determine whether termination of respondent's parental rights was proper under MCL 712A19(3)(g).

care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App at 346-347, quoting *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015).]

In most situations, it is in the child's best interests to be placed with siblings. *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012).

The trial court did not clearly err when it determined that termination of respondent's parental rights was in the best interests of QG and MM. Petitioner presented detailed testimony regarding respondent's repeated failure to abide by a case service plan, unresolved mental health issues, housing instability, and general lack of parenting ability. Throughout these child protective proceedings respondent was offered extensive services by the DHHS, which included parenting classes, individual therapy, medication management, mental health services, psychological and psychiatric evaluations, housing resources, supportive visitations, and a parent-partner, but respondent failed to apply any learned skills or make any substantial progress throughout the case. See *In re Moss*, 301 Mich App at 89 (noting, "at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has").

Respondent advances that the testimony established the deep bond between respondent and her children, and that there were minimal concerns about respondent's parenting skills. While Albany recognized that respondent loved her children, Albany observed the minor children and respondent spent the majority of the supervised visitations on their cellphones, and respondent would inappropriately discuss the case service plan in the presence of QG and MM. Furthermore, respondent failed to participate in the majority of the supervised parenting time sessions, and was late to four of the supervised visitations, which led to her spending a mere 15 minutes with the minor children. Additionally, Albany believed that, due to MM's behavioral issues and significant trauma, there would be considerable demands in raising her, which respondent was incapable of meeting due to her continued inability to comply with the fundamental terms of the case service plan.

The evidence showed that QG and MM were adjusting well in their current placements, and despite living separately, the children's foster care worker made efforts to allow QG and MM to meet on a monthly basis. Given the length of the proceedings and respondent's inability to substantially comply, continued reunification efforts were outweighed by QG's and MM's need for stability, permanency, and finality. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of QG and MM.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle